IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| EVELYN S. MERRITT, AND SHARON L.<br>MERRITT MCMILLEN, INDIVIDUALLY AND<br>AS TRUSTEE OF THE MERRITT LIVING TRUST,<br><br>    Plaintiffs,<br><br>v.<br><br>NEXTON MINING, INC. SUNFLOWER FARM &<br>RANCH, INC. STEVEN L. PETERS, KIMBERLY K.<br>PETERS, AND ROSS A. WENGER,<br><br>    Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | No. 1:17-CV-040-JRH-BKE |

## DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. 12(b)(1) & (c), OR, IN THE ALTERNATIVE, TO STAY THE PROCEEDINGS

COME NOW Defendants Nexton Mining, Inc., Sunflower Farm & Ranch, Inc., Steven L.

Peters, Kimberly K. Peters, and Ross A. Wenger, and hereby move to **DISMISS** Plaintiffs'

complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(c). In the alternative, Defendants request

the Court to **STAY** all proceedings in the captioned matter pending the resolution of parallel

state court proceedings under the abstention doctrine enunciated in Colorado River Water

Conservation District v. United States, 424 U.S. 800 (1976).

### I. Background

#### A.    Plaintiffs' Complaint

Plaintiffs filed the captioned "citizen suit" pursuant to § 505 of the federal Water

Pollution Control Act (hereinafter, "Clean Water Act" or "CWA") on April 6, 2017. The gist of

Plaintiffs' complaint is that, in allegedly improving certain land "from forest-pasture to irrigated

row crops" in 2013-2016, Defendants violated the CWA by discharging "dirt, rock, sand, and

other pollutants into several acres of wetlands and tributaries of Williamson Swamp Creek."

(Compl. ¶ 103; see also id. at 1 (prefatory paragraph).) Plaintiffs allege that from 2013-2015,

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| EVELYN S. MERRITT, AND SHARON L.<br>MERRITT MCMILLEN, INDIVIDUALLY AND<br>AS TRUSTEE OF THE MERRITT LIVING TRUST,<br><br>    Plaintiffs,<br><br>v.<br><br>NEXTON MINING, INC. SUNFLOWER FARM &<br>RANCH, INC. STEVEN L. PETERS, KIMBERLY K.<br>PETERS, AND ROSS A. WENGER,<br><br>    Defendants. | * * * * * * * * * * * * * | No. 1:17-CV-040-JRH-BKE |

## DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. 12(b)(1) & (c), OR, IN THE ALTERNATIVE, TO STAY THE PROCEEDINGS

COME NOW Defendants Nexton Mining, Inc., Sunflower Farm & Ranch, Inc., Steven L.

Peters, Kimberly K. Peters, and Ross A. Wenger, and hereby move to **DISMISS** Plaintiffs'

complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(c). In the alternative, Defendants request

the Court to **STAY** all proceedings in the captioned matter pending the resolution of parallel

state court proceedings under the abstention doctrine enunciated in Colorado River Water

Conservation District v. United States, 424 U.S. 800 (1976).

### I. Background

#### A.    Plaintiffs' Complaint

Plaintiffs filed the captioned "citizen suit" pursuant to § 505 of the federal Water

Pollution Control Act (hereinafter, "Clean Water Act" or "CWA") on April 6, 2017. The gist of

Plaintiffs' complaint is that, in allegedly improving certain land "from forest-pasture to irrigated

row crops" in 2013-2016, Defendants violated the CWA by discharging "dirt, rock, sand, and

other pollutants into several acres of wetlands and tributaries of Williamson Swamp Creek."

(Compl. ¶ 103; see also id. at 1 (prefatory paragraph).) Plaintiffs allege that from 2013-2015,

Defendants cleared and mass-graded property near Plaintiffs' land, with the result that "tens of thousands of cubic yards . . . of dredged and/or fill material" was "discharged" into wetlands that drain to a small pond on their property. (Compl. ¶ 74.) Plaintiffs also allege that, from 2014-2015, Defendants constructed a "berm and/or embankment" and "a large dike and/or dam" which have "contributed to damage to [Plaintiffs'] Property from runoff of excess stormwater and sediment." (Id. ¶¶ 84, 88.)

Plaintiffs further allege that these activities caused fill materials to be discharged and to flow downstream to ponds on their property, a tributary of Williamson Swamp Creek on their property, and into Williamson Swamp Creek itself. (Id. ¶ 90.) Plaintiffs also claim that Defendants took no action to remedy this situation "from 2014 through early 2016," with the result that erosion caused more "dredged and/or fill material to flow downstream and deposit" into the aforementioned pond, tributary and Williamson Swamp Creek. (Id. ¶ 91.)

Plaintiffs contend Defendants' "unpermitted discharges of dredged and/or fill material" constituted violations of §§ 301 and 404 of the CWA, 33 U.S.C. §§ 1311 and 1344. (Id. ¶ 105.) According to Plaintiffs, the "dredge[d] or fill material" at issue "have been there for years." (Id.) Plaintiffs contend that Defendants' past activities constitute "continuing" violations of the CWA because the "dredged and/or fill material remained and remains in the wetlands." (Id. ¶ 104; see also id. ¶ 51.)

At bottom, Plaintiffs claim that, as a result of Defendants' past activities, Plaintiffs' use and enjoyment of Plaintiffs' property (i.e., "fishing, swimming, boating, hunting, camping, prayer and meditation, and family gatherings and reunions") has been impaired. (Id. ¶ 94.) As relief, Plaintiffs seek the imposition of civil penalties, a "temporary and/or permanent injunction . . . ordering Defendants to . . . take all necessary steps to come into permanent, consistent compliance with the CWA [and] . . .to remove all dredged and/or fill from and [to] restore the

physical, biological, and ecological integrity of the wetlands," and to award Plaintiffs' attorneys' fees. (Id. ¶ 108 (Prayer for Relief).)

## B.      Plaintiffs' Pending State Court Action

### 1.      Plaintiffs' State Court Complaint

More than a year prior to filing the instant CWA complaint, Plaintiffs filed an action in the Superior Court of Jefferson County, Georgia on February 19, 2016. (Merritt, et al., v. Sunflower Farm & Ranch, Inc., et al., Civ. A. No. 16-CV-00074, Compl. (Feb. 19, 2016) (attached hereto as Defs.' Ex. A).) With the exception of Defendant Nexton Mining, Inc., the state court action involves the same parties. (See id.)

Although Plaintiffs' state and federal pleadings are not carbon copies, the factual allegations in Plaintiffs' instant CWA complaint closely mirror allegations first raised in Plaintiffs' more comprehensive state court complaint. (Compare doc. no. 1 ¶¶ 9-27, 30-32, & 52-99, with Defs.' Ex. A ¶¶ 1-36, 42-53, 70-72, 76-78, 96, 98-103, 108-14, 127-31.) In addition to common-law claims for nuisance, negligence, and trespass, Plaintiffs' state court complaint also alleges that Defendants committed "negligence per se" by violating the Georgia Water Quality Control Act and the CWA—in essence, the very same claims Plaintiffs raise in the captioned federal suit.[1] (See Defs.' Ex. A ¶¶127-131.) As relief in the state court action, Plaintiffs seek compensatory damages, punitive damages, attorneys' fees, and injunctive relief to

---

[1] Admittedly, Plaintiffs may probably not recover civil penalties under the CWA in their state court action. See 28 U.S.C. § 1355. However, there is case law suggesting that federal and state courts otherwise have concurrent jurisdiction over CWA claims, see, e.g., Kopacz v. Hopkinsville Surface & Storm Water Util., 714 F. Supp. 2d 682, 691 (W.D. Ky. 2010), and under Georgia law, Plaintiffs may pursue claims for negligence per se under the theory that Defendants violated the Georgia Water Quality Control Act (the State's statutory scheme implementing the CWA) and/or the CWA. See Pulte Home v. Simerly, 322 Ga. App. 699, 706, 746 S.E.2d 173, 179 (2013). Plaintiffs may also pursue such negligence per se claims in state court without satisfying prerequisites for a citizen suit under the CWA. See id. Perhaps also of note, the inclusion of alleged CWA violations as the basis for Plaintiffs' claims for negligence per se did not render Plaintiffs' state court complaint removable to this Court. See Stephens Cty. v. Wilbros, LLC, No. 2:12-CV-0201-RWS, 2012 WL 4888425, at *2 (N.D. Ga. Oct. 6, 2012). Thus, Plaintiffs carefully avoided federal court jurisdiction until it suited them to subject Defendants to duplicative litigation in separate fora.

"abate" the flow of storm water and sediment onto Plaintiffs' property.[2] (Id. ¶ 152 (Prayer for Relief).)

## 2.  Progress of the State Court Action

As noted *supra*, Plaintiffs' state court action against these Defendants has been pending since February 2016—over 14 months.  During that time, the parties have exchanged written discovery, conducted three site inspections, and conducted numerous fact witness depositions. (See Parties' Joint Mot. to Extend Discovery in the Jefferson County Action (filed March 16, 2017) (attached hereto as Defs.' Ex. B).)   Discovery in the state court action is set to close on June 16, 2017.  (See Apr. 5, 2017 Order Granting Joint Mot. to Extend Discovery (attached hereto as Defs.' Ex. C).)  In short, substantial progress toward resolution has been made in the Jefferson County action, while the captioned case has only just begun.

## II.  Argument

### A.  Plaintiffs Allege CWA Violations that are "Wholly Past," with the Result that this CWA Citizen Suit Should be Dismissed.

#### 1.  Applicable Legal Standard

Defendants move to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(c) on the grounds that Plaintiffs have failed to state a viable CWA claim.[3]  To properly state a claim, a

---

[2] Although Plaintiffs' state court complaint requested a temporary restraining order and an interlocutory injunction (see Defs.' Ex. A ¶ 152 (Prayer for Relief)), Plaintiffs never filed a motion for such relief in state court and have not requested this Court to issue a temporary restraining order or a preliminary injunction.

[3] As Defendants have filed answers, the instant motion is brought pursuant to Fed. R. Civ. P. 12(c) rather than Rule 12(b)(6).  This distinction is of little moment:

> Rule 12(c) is . . . a vehicle by which litigants may, after the pleadings are closed, assert a 12(b)(6) motion for their opponent's failure to state a claim upon which relief can be granted. Such an assertion is allowed after the close of the pleadings by Rule 12(h)(2). If a party uses Rule 12(c) to assert a 12(b)(6) defense [ . . . ] the Court will apply the same standards to the motion as if it were brought directly under Rule 12(b)(6). See Miami Herald Pub. Co., Div. of Knight ridder Newspapers, Inc. v. Ferme, 636 F. Supp. 970 (S.D.Fla.1985); Morgan v. Church's Fried Chicken, 829 F.2d 10 (6th Cir.1987), and cases cited therein; 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1367 (1990).

Sikes v. American Tel. and Tel. Co., 841 F. Supp. 1571, 1580 (S.D. Ga.1993).

complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1953 (2009). The Court takes the complaint's factual allegations as true, but it is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). On a motion to dismiss, a court should first eliminate allegations that are mere legal conclusions, and then determine whether the remaining factual allegations "plausibly give rise to an entitlement to relief." Am. Dental Ass'n. v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010).

## 2.    CWA Citizen Suits

Plaintiffs seek to invoke this Court's jurisdiction under the citizen suit provision of the federal Clean Water Act.[4] Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), authorizes "citizens" as defined in the statute to enforce "effluent standards or limitations" specified by definition in subsection (f). The specific "effluent standard or limitation" at issue here, as alleged in Plaintiffs' complaint (see Compl. ¶¶ 33-51), is that at subsection (f)(1), the prohibition in Section 301(a) of the Clean Water Act, 33 U.S.C § 1311(a), against "any discharge of any pollutant by any person" unless done "in compliance with" specified provisions of the statute, including 33 U.S.C. § 1344 (§ 404). "Discharge of a pollutant" is defined in the statute as "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

Section 404 gives the Army Corps of Engineers authority to permit the discharge of "dredged" or "fill" material into jurisdictional waters. 33 U.S.C. §§ 1344. Neither of those terms is defined in the statute. Defendants assume Plaintiffs rely on the regulatory definition of "fill." "Fill material" means "material placed in waters of the United States where the material has the effect of: (i) Replacing any portion of a water of the United States with dry land; or (ii) Changing

---

[4] 33 U.S.C. §§ 1251 – 1387.

5

the bottom elevation of any portion of a water of the United States." 33 C.F.R. § 323.2(e)(1); see also Ogeechee-Canoochee Riverkeeper, Inc. v. T.C. Logging, Inc., Civ. No. 6-08-cv-064, 2009 U.S. Dist. LEXIS 67705, at *27 (S.D. Ga. Aug. 4, 2009).

To prevail, Plaintiffs must first plead the following to make out a violation of Section 301 of the Clean Water Act:  that Defendants are (1) persons who (2) discharge a pollutant (3) from a point source (4) into waters of the United States (5) without a permit issued under Section 404 of the Clean Water Act. Id. at *26; National Wildlife Federation v. Gorsuch, 693 F.2d 156 (D.C. Cir. 1982). For purposes of this motion, Defendants do not currently challenge Plaintiffs' allegations that the bodies of water at issue are "waters of the United States" or that Plaintiffs have adequately alleged the existence of a "point source."  Rather, at issue in this motion is whether Plaintiffs have adequately alleged an unlawful discharge.

### 3.    Plaintiffs Fail to Allege "Ongoing" Violations.

For any violation to be enforceable under the citizen suit provision of the CWA, Plaintiffs must plead facts to show that the unlawful discharge is *ongoing* at the time the complaint was filed.  As explained *supra*, Plaintiffs complain that Defendants' alleged activities in 2013-2016 caused fill materials to be discharged and to flow downstream to ponds on their property, a tributary of Williamson Swamp Creek on their property, and into Williamson Swamp Creek. Plaintiffs' complaint makes clear their claims for "ongoing" violations are based on allegations that, as a result of Defendants' alleged prior discharges, fill material remains in the water bodies at issue—**Plaintiffs do not allege facts showing that Defendants are engaging in any ongoing, affirmative conduct which is currently causing or will cause discharges**.  (See Compl. ¶¶ 51, 104-05.)  In fact, Plaintiffs allege the fill materials at issue "have been there for years."  (Id. ¶ 105.)

Contrary to the contentions in Plaintiffs' complaint, it is not sufficient merely to claim that previously-discharged pollutant material remains "unremediated," because § 505 citizen

suits can only be used to enforce ongoing violative *acts*, not mere continuing effects. This

citizen suit can go forward only if Plaintiffs have successfully alleged that Defendants are

committing ongoing violations of the CWA enforceable under Section 505 of the Act, 33 U.S.C.

§ 1365. The citizen suit provision authorizes a citizen, where enforcement action has not been

taken by the United States, to maintain an action "against any person…who is ***alleged to be in***

***violation*** of…an effluent standard or limitation." The question whether citizen suit enforcement

could be undertaken against an alleged violator for past violations was answered in the negative

by the Supreme Court of the United States many years ago.

   In Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., the Court took up a

conflict among the Circuit Courts of Appeals as to whether Section 505(a) of the Clean Water

Act "confers federal jurisdiction over citizen suits for wholly past violations." 484 U.S. 49, 52

(1987). Starting with the language of the statute, the Court observed: "The most natural reading

of 'to be in violation' is a requirement that citizen-plaintiffs allege a state of either continuous or

intermittent violation…." Id. at 57. The Court distinguished the citizen enforcement provision

from § 309, 33 U.S.C. § 1319, which authorizes government enforcement. The latter does not

"intertwine equitable relief with the imposition of civil penalties," whereas the citizen suit

provision suggests a connection between injunctive relief and civil penalties that is noticeably

absent from the provision authorizing agency enforcement." Id. at 58. Defendants note in

addition that § 309 employs the past tense ("any person who has violated," § 309(g)), whereas §

505 employs the infinitive ("any person alleged to be in violation"). Therefore, "citizens, unlike

the Administrator, may seek civil penalties only in a suit brought to enjoin or otherwise abate an

ongoing violation." Id. at 59.

   Here, Plaintiffs allege that the remaining presence of fill materials—caused by past

conduct—constitutes an "ongoing" violation. Defendants acknowledge this position finds

support in prior district court cases, including a prior decision in this District. See Jones Creek

Inv'rs, LLC v. Columbia Cty., Ga., No. CV 111-174, 2013 WL 1338238, at \*12 (S.D. Ga. Mar. 28, 2013) (Wood, C.J.) (citing City of Mountain Park v. Lakeside at Ansley, LLC, 560 F. Supp. 2d 1288 (N.D. Ga. 2008)). However, the Eleventh Circuit has not yet addressed the issue, and Defendants respectfully contend that Jones Creek, Mountain Park, and similarly-minded cases—which treat fill materials "differently than those involving other pollutants," see id.—were wrongly decided.

In Crigler v. Richardson, No. 3:08-681, 2010 U.S. Dist. LEXIS 67419, 2010 WL 2696506 (M.D. Tenn. July 7, 2010), a case involving facts which are similar to the case *sub judice*, the district court explicitly rejected the reasoning employed in Mountain Park and likeminded cases. In Crigler, the defendant had allegedly deposited illegal fill[5] in one place that made its way downstream to the plaintiffs' property. The district court refused to reconsider its prior dismissal of the CWA citizen suit on the ground that the alleged violations were "wholly past." Relying on Ailor v. City of Maynardsville, 368 F.3d 587, 598 (6th Cir. 2004) (which held that "citizen suits for wholly past violations would undermine the supplementary rule envisioned by Congress"), the Crigler court determined the true issue was "whether the defendants were actually polluting at the time the Complaint was filed." Crigler, 2010 WL 2696506, at \*5, 2010 U.S. Dist. LEXIS 67419, at \*17.

Defendants respectfully suggest that, like the Sixth Circuit, this Court should focus on the statute itself, not on non-binding case law which purports to create a distinction which is notably absent from the text of the CWA itself. As Justice Scalia instructed in Oncale v. Sundancer Offshore Services, Inc., 523 U.S. 75, 79 (1998), "it is ultimately the provisions of our laws rather

---

[5] Specifically, the defendants allegedly disposed of construction debris and cement waste improperly. See Crigler v. Richardson, No. 3:08-0681, 2010 WL 2265675, at \*1 (M.D. Tenn. June 3, 2010).

than the principal concerns of our legislators by which we are governed."[6] The Supreme Court reiterated that approach in <u>Cooper Industries, Inc. v. Aviall Services, Inc.</u>, 543 U.S. 157 (2004), an environmental case interpreting the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). Each side there sought to bolster its reading of a complicated provision of CERCLA by construing the statute's purpose. Recalling Justice Scalia's words in <u>Oncale</u>, the Court found no reason to consult that purpose, "[g]iven the clear meaning of the text." <u>Id.</u> at 167.

This Court should "begin with the language of the statute." <u>See, e.g., Burlington Northern & Santa Fe Ry. Co. v. United States</u>, 556 U.S. 599 (2009). The statutory meaning must be determined by the plain language used. <u>Id.</u> "Statutes must 'be read as a whole.'" <u>U.S. v. Atlantic Research Corp.</u>, 551 U.S. 128, 135 (2007) (quoting <u>Long v. St. Vincent's Hospital</u>, 502 U.S. 215, 221 (1991)). Reading the statute as a whole here requires the Court to interpret the words of a statute in context and to apply the "rule against superfluities." <u>See Hibbs v. Arizona Department of Revenue</u>, 542 U.S. 88, 101 (2004). This Court must give effect "to every word, clause, and sentence of a statute." <u>Id.</u>

"Act" is the word in Section 505 of the CWA that must be given effect. <u>See</u> 33 U.S.C. § 1365(f)(1). The statutory context in which "act" is found are the enforcement provisions of the CWA, Sections 309 and 505, 33 U.S.C. §§ 1319 and 1365. Section 309 authorizes the federal government to issue compliance orders or sue where "any person is in violation of any condition or limitation which implements Section 1311 . . . ." 33 U.S.C. § 1319(a)(1) & (b). Section 505 supplements government enforcement with citizen enforcement, but not on the same terms. Among other limitations on citizen enforcement, the plaintiff must plead that the defendant is a person "who is alleged to be in violation of (A) an effluent standard or limitation . . . ." The term

---

[6] Before focusing on analysis of the statute at issue in <u>Oncale</u>, Justice Scalia noted "a bewildering variety of stances" taken by the lower courts. 523 U.S. at 79.

"effluent standard or limitation" is defined, as pertinent here, as "an unlawful *act* under subsection (a) of section 1311 of this Title." 33 U.S.C. § 1365(f)(1) (emphasis added). Thus, a Section 505 citizen-suit plaintiff must allege an ongoing *act* which violates 33 U.S.C. § 1311(a) at the time of filing.

Plaintiffs have not done so. Rather, by deeming the mere presence of sediment an ongoing "violation" of the CWA, they read the word "act" right out of § 505. Plaintiffs allege Defendants engaged in activities which caused illegal discharges between 2013 and "early 2016"—more than a year before Plaintiffs filed the captioned case. (See Compl. ¶¶ 65, 74, 79-80, 84, 86-91, 105.) Although Plaintiffs also conclusory allege that discharges "are continuous and/or intermittent and/or reasonably likely to continue in the future" (id. ¶ 106), the balance of Plaintiffs' complaint makes clear that Plaintiffs seek to recover for the continuing *effects* of past discharges. Because any acts in violation of the CWA are only alleged to have occurred entirely in the past, Plaintiffs' CWA claims fail as a matter of law.

"Discharge" is defined in the statute as "any *addition* of any pollutant to navigable waters from any point source." 33 U.S.C. §§ 1311, 1362(12); see also 33 C.F.R. § 323.2(f) (stating "the term discharge of fill material means the *addition* of fill material into waters of the United States"). Once an alleged violator stops adding a pollutant, the violation itself is over. The effects of the violation might remain, but the effects are not themselves violations. See Nat'l Parks & Cons. Ass'n v. TVA, 502 F.3d 1316, 1322 (11th Cir. 2007) (interpreting Clean Air Act and holding "it is important to distinguish between the present consequences of a one-time violation…and a continuation of a violation into the present…."). The complaint here is bereft of pleaded *facts* showing Defendants are currently adding pollutants to navigable waters. In fact, the latest date that Plaintiffs allege Defendants acted affirmatively in violation of the CWA is "early 2016." (See Compl. ¶¶ 86-91.) If the addition of pollutants *stopped* in 2016 as alleged in

the complaint, then the plain inference is that Defendants are not discharging pollutants now and accordingly are not violating the CWA in the § 505 context.

Of note, while unenforceable by citizen suits under § 505, a wholly past discharge is enforceable by the Government under Section 309 of the CWA where the alleged violations have ceased but residual pollutant remains. That correct conclusion was reached by the United States Court of Appeals for the Second Circuit, applying Gwaltney, in Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co., 989 F.2d 1305 (2d Cir. 1993). In that case, a fishermen's association concerned about damage to Long Island Sound arising from a skeet club's deposit of clay targets and lead shot onto land around the club and in the adjacent water filed a citizen suit invoking both the Clean Water Act and the Resource Conservation and Recovery Act ("RCRA"). Plaintiffs alleged the disposal into the water constituted the discharge of fill in violation of Sections 301 and 404. The district court, citing Gwaltney, dismissed the association's Clean Water Act suit because the discharges had admittedly ceased.

On appeal, the Second Circuit affirmed the dismissal of the Clean Water Act count. Id. at 1311. Applying Gwaltney, the court framed the issue in this way: "The critical time for determining whether there is an ongoing violation is when the complaint is filed." Id. The plaintiff's amended complaint acknowledged that the discharges from the skeet club had ceased when the club stopped operating months before suit was filed. Id. Addressing the same question at issue in the present litigation, the court found this acknowledgment could not be cured with the allegation "that the lead shot previously deposited in the sound is a point source discharging pollutants as it dissolves. *The present violation requirement of the Act would be completely undermined if a violation included the mere [ongoing effects] of pollutants.*" Id. at 1313 (emphasis added). The court concluded: "plaintiff's Clean Water Act suit against Remington was directed at wholly past violations." Id.

11

Many other courts have followed this rationale. See, e.g., Aiello v. City of Brookhaven, 136 F. Supp. 2d 81, 120 (E.D.N.Y. 2001) (holding CWA does not allow citizen suit against a past polluter "for the ongoing migrating leachate plume"); Wilson v. Amoco Corp., 33 F. Supp. 2d 969, 975-76 (D. Wyo. 1998) (concluding "that migration of residual contamination from previous releases does not constitute an ongoing discharge"); Friends of Santa Fe County v. LAC Minerals, Inc., 892 F. Supp. 1333, 1353 (D.N.M. 1995) (concluding that failure to remove waste rock from water does not constitute an ongoing violation); Brewer v. Ravan, 680 F. Supp. 1176, 1183 (M.D. Tenn. 1988) (dismissing citizen suit based on allegations made against a permanently closed manufacturing plant). The Second Circuit's reasoning in Remington also comports with the reasoning of other Court of Appeals. See Pawtuxet Cove Marina, Inc. v. Ciba-Geigy Corp., 807 F.2d 1089, 1094 (1st Cir. 1986) (dismissing citizen suit because the alleged polluter had ceased operations by the time of the suit); see also Hamker v. Diamond Shamrock Chem. Co., 756 F.2d 392, 397 (5th Cir. 1985) (dismissing complaint because it "alleges only a single past discharge with continuing effects, not a continuing discharge"). This conclusion has also been reached in cases which explicitly involve fill material. See Bettis v. Town of Ontario, 800 F. Supp. 1113 (W.D.N.Y. 1992) (plaintiffs' § 505 suit alleged only wholly-past violations where based upon fill of wetland for residential development that had been completed prior to suit being filed).

Again, Plaintiffs allege that pollutants were discharged as a result of events which concluded in "early 2016," more than a year ago. Plaintiffs filed suit in Jefferson County on February 19, 2016 (see Defs.' Ex. A), but have never moved for any form of preliminary or interlocutory injunction—belying any assertion that illegal discharges are ongoing. Rather, it is clear from Plaintiffs' complaint that they complain of the continued presence and effects of prior discharges on the ground that, so long as fill materials remain in the bodies of water at issue, a

violation is ongoing. Under Gwaltney, the Court should reject Plaintiffs' legal conclusion and grant Defendants' motion to dismiss.

**B.**    **Plaintiffs Failed to Provide Adequate Notice of Intent to Sue, a Jurisdictional Prerequisite to Suit under the CWA.**

Plaintiffs failed to provide sufficient information regarding the alleged CWA violations in their 60-Day Notice of Intent to Sue Letter (see doc. no. 1-1); consequently, the instant lawsuit should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). See, e.g., Atwell v. KW Plastics, 213 F. Supp. 2d 1294, 1298 (M.D. Ala. 2002) (holding that Atwell's failure to comply with CWA notice requirements required dismissal for lack of subject matter jurisdiction). Prior to filing the instant suit, the Plaintiffs were required to provide a Notice of Intent to Sue Letter detailing: (1) the specific standard allegedly violated, (2) the activity alleged to constitute a violation, (3) the date, location and persons responsible for the alleged violations, and (4) the contact information for the Plaintiffs and their counsel. 40 C.F.R. § 135.3(a) & (c). The Supreme Court of the United States has held that the notice requirements found in citizen suit provisions are "mandatory conditions precedent to commencing suit" and a failure to comply strictly requires dismissal. See Hallstrom v. Tillamook County, 495 U.S. 20, 31 (1989) (construing RCRA); Washington Trout v. McCain Foods, 45 F.3d 1351 (9th Cir. 1994) (applying Hallstrom to the Clean Water Act); Nat'l Envtl. Found. v. ABC Rail Corp., 926 F.2d 1096, 1097 (11th Cir. 1991) (notice requirement "is a mandatory condition precedent to the filing of a citizen suit" under the Clean Water Act.)

The notice "must be sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit." Atl. State Legal Found. Inc. v. Stroh Die Casting Co., 116 F.3d 814, 819 (7th Cir. 1997); see also Carney v. Gordon County, Georgia, 2006 WL 4347048 (N.D. Ga. 2006); Purvis v. Douglasville Development, LLC., 2006 WL 3709610 (N.D. Ga. 2006) (finding that "[t]o satisfy the notice

requirement, Plaintiffs must provide enough information to enable both the alleged violator and the appropriate agencies to identify the pertinent aspects of the alleged violations without undertaking an extensive investigation of their own.") Plaintiffs' notice, while lengthy, fails to specifically detail what alleged violations give rise to the suit in sufficient detail to allow defendants the opportunity to take corrective action.[7] As such, Plaintiffs have failed to comply with the notice provisions of the Clean Water Act, and Plaintiffs' complaint should be dismissed.

Plaintiffs' notice asserts generic assertions that "these violations include the continuing presence of acres and thousands of cubic yards of illegally discharged dredged and fill material in Waters of the United States (wetlands, ponds, and tributaries of Williamson Swamp Creek) on Jefferson County Parcel Nos. 0025021 & 0025015 owned by Sunflower Farm & Ranch, Inc. and Steve L. Peters." What is conspicuously missing is any reference to which specific wetlands, ponds or tributaries and/or what portions of any specific wetlands, ponds or tributaries. Plaintiffs likewise vaguely assert that the improvements on the property "severely modified the hydrological regime of the Property" but fail to say how, where, and why this impacts any wetlands, ponds or tributaries on the property. Further, Plaintiffs generically state that defendants have "destroyed Waters of the United States" without specifying which waters have been destroyed and the specific areas that have been filled.

Plaintiffs refer to two parcels of land, Parcel No. 0025021 and Parcel No. 0025015, as the areas where the alleged violations occurred. According to Plaintiffs, these two parcels comprise over 234.33 acres. (See Defs.' Ex. A ¶ 27). Plaintiffs' notice of intent letter does not specify where on these 234.33 acres the alleged violations occurred. Without specifically knowing

---

[7] In addition to failing to provide specific information regarding the alleged violations, Plaintiffs have failed to provide adequate information regarding the time of the violations. The Plaintiffs' notice letter simply states "the above-described illegal discharges of dredged and fill material began in late 2013 and continued through 2014 and 2015." Besides stating that the violations occurred over a generic three year period, Plaintiffs failed to provide any specific information regarding the timing of the alleged violations. National Parks and Conservation Ass'n, Inc. v. Tennessee Valley Authority, 502 F.3d 1316 (11th Cir. 2007) (providing that under the Clean Air Act an assertion that defendant "failed every day" to comply did not provide adequate guidance to defendant to identify the violations of which it is accused.)

where Plaintiffs contend the fill or discharges occurred, Plaintiffs' notice of intent to sue left

Defendants to guess what actions would be sufficient to resolve the alleged issue and avert the

lawsuit.

In addition to referring to two large parcels of land, and without supplying any additional

information, Plaintiffs simply refer to three aerial photos taken between 2010 and 2015. (See

doc. no. 1-1.) These aerial photographs show a very large area which includes neighboring

property and property owned by the Plaintiffs. The aerial photographs do not provide any

specific information regarding where the alleged violations occurred, how they occurred, or what

specific actions could be taken to avert the instant lawsuit. The aerial photographs do not

specifically identify the areas where the Plaintiffs contend wetlands were filled, where sediment

was discharged, what wetlands, ponds or tributaries were filled, or how any alleged discharge

occurred on the property. Instead, Plaintiffs point to generic aerial photographs and hope that is

sufficient. However, this fails to provide the specificity required to provide adequate notice to

bring a citizen suit under the Clean Water Act.

In sum, Plaintiffs' notice of intent letter fails to provide sufficient notice. As a result,

Plaintiffs have failed to meet a basic jurisdictional requirement to bring the instant CWA citizen

lawsuit. Accordingly, Plaintiffs' complaint should be dismissed.

## C.   In the Alternative, The Court Should Stay this Case Pursuant to <u>Colorado River</u>.

### 1.   The <u>Colorado River</u> Abstention Doctrine

Generally, "[a]bstention from the exercise of federal jurisdiction is the exception, not the

rule." <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800, 813 (1976).

Although the Court usually has a "virtually unflagging obligation" to exercise its jurisdiction,

exceptional circumstances can warrant the stay "of a federal suit due to the presence of a

concurrent state proceeding for reasons of wise judicial administration." <u>Id.</u> at 817-18. Under

<u>Colorado River</u>, the Court has discretion to postpone the exercise of jurisdiction when there is a

parallel, pending state court action concerning the same subject matter. See id. "The principles of this doctrine 'rest on considerations of [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" Moorer v. Demopolis Waterworks & Sewer Bd., 374 F.3d 994, 997 (11th Cir. 2004) (affirming district court's decision to abstain in CWA case) (internal quotation marks omitted) (quoting Colorado River, 424 U.S. at 817).

In evaluating whether to exercise its discretion under Colorado River, the Court should consider the following factors:

> (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties.

Moorer, 374 F.3d at 997. However, the decision whether to abstain "'does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'" Id. (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Co., 460 U.S. 1, 16 (1983)). "The weight of each factor varies on a case-by-case basis, depending on the particularities of that case." Id. Indeed, although no single factor should typically be dispositive, see, e.g., Jackson-Platts v. Gen. Elec. Capital Corp., 727 F.3d 1127, 1141 (11th Cir. 2013), "[o]ne factor alone can be the sole motivating reason for the abstention." Moorer, 374 F.3d at 997 (observing "that the desire to avoid piecemeal adjudication was the driving force behind the dismissal in Colorado River").

2.    The Colorado River Factors Weigh in Favor of Staying this CWA Action.

Of course, the threshold inquiry under Colorado River is whether the state and federal actions are "parallel." Actions are parallel proceedings if they involve substantially the same parties and issues. In this regard, substantial similarity is all that is required—"otherwise, the Colorado River doctrine could be entirely avoided by the simple expedient of naming additional

parties" or the inclusion of additional claims. See Lumen Const., Inc. v. Brant Const. Co., 780 F.2d 691, 695 (7th Cir. 1985) (affirming abstention despite presence of additional parties and claims in the federal suit).

Here, with the lone exception of Nexton Mining, Inc., added as a defendant in the instant suit, the state court action and the captioned case involve identical parties.[8] The factual allegations underlying both suits are also substantially the same. Importantly, although Plaintiffs' theories of recovery differ slightly (In their state court complaint, Plaintiffs style their CWA claims as claims for negligence per se.), Plaintiffs allege the same underlying CWA violations in both suits. Plaintiffs' federal and state court actions are parallel proceedings.

Addressing the Colorado River factors *in seriatim*, the balance of the factors militates in favor of abstention. Admittedly, neither court has assumed jurisdiction over the subject property, and any difference in convenience between the Augusta Division of this Court and the Superior Court of Jefferson County would be fairly nominal. Thus, the first two factors are essentially neutral.

However, the third and fourth factors—"the order in which jurisdiction was obtained and the relative progress of the two actions" and "the desire to avoid piecemeal litigation"—both weigh in favor of abstention. First, Plaintiffs filed their state court action—raising essentially the same claims—more than a year before filing the subject suit, and substantial progress in the state court action has been made. The parties have exchanged discovery and taken numerous depositions. In fact, discovery in the state court action is set to expire in just over a month. In sum, the Jefferson County state court action has travelled much further toward the path to resolution than the instant federal case, which has only just begun.

The fourth Colorado River factor weighs heavily in favor of abstention. There is "a distinct danger of piecemeal litigation in this case if both the state and federal actions were

---

[8] The allegations against Nexton Mining are virtually identical to the allegations made against the other defendants.

allowed to proceed." Moorer, 374 F.3d at 997. Allowing Plaintiffs' duplicative state and federal court cases to proceed simultaneously will waste judicial resources. "[N]umerous district courts in the Eleventh Circuit have found that when there has been identical litigation filed in both federal and state courts, duplicative proceedings would be unduly excessive." Amason & Assocs., Inc. v. Columbus Land Dev., LLC, No. 7:12-CVB02459-JHE, 2014 WL 467509, at *12 (N.D. Ala. Feb. 5, 2014) (citing Sides v. Simmons, No. 07–cv–80347, 2007 WL 3344405, at *3 (S.D. Fla. Nov. 7, 2007); Leaderstat, LLC v. Abisellan, No. 8:06–cv–1337–T–23TGW. 2007 WL 5433486, at *3 (M.D. Fla. Jan. 24, 2007); Bosdorf v. Beach, 79 F. Supp. 1337, 1344 (S.D. Fla. 1999); & Benetton Servs. Corp. v. Benedot, Inc., 758 F.Supp. 685 (N.D. Ala.1991)).

Allowing both actions to proceed at once would encourage needless piecemeal litigation, raise the specter of potentially inconsistent results, and present a serious waste of judicial resources. To illustrate the point, in Moorer, cited *supra*, the plaintiff intervened in a state court action brought by the State of Alabama for violations of the Alabama Water Pollution Control Act before bringing a CWA suit in federal court. 374 F.3d at 996. Despite the existence of "subtle differences" between Moorer's federal claims and the claims in the state court litigation, the Eleventh Circuit concluded that the danger of piecemeal litigation justified abstention. Id. at 997.

In so concluding, the Moorer panel expressly noted that the fact that the actions "involved state and federal clean water acts" did not affect the analysis. Id. The same is true here. Thus, the fifth factor (whether federal law provides the rule of decision) is inconclusive. Although the instant case contains only federal claims, in the Jefferson County action, Plaintiffs' comprehensive complaint contains state common-law tort claims and negligence per se claims which rely upon both state and federal environmental laws. Federal law will not necessarily provide the rule of decision as to whether Plaintiffs are entitled to relief. Indeed, in the Jefferson

County action, Plaintiffs seek relief under state law which is not available under the CWA (*e.g.*, compensatory and punitive damages).

In this regard, the more comprehensive state court proceeding is better positioned to protect the rights of the parties than the captioned case. "'[W]hen there are additional claims raised in the state court case, abstention is particularly appropriate because the state court case is more comprehensive, and the state court can determine at one time all of the claims arising from [the] same set of facts.'" Amason & Assocs., Inc., 2014 WL 467509, at *12 (quoting Rambaran v. Park Square Enters., Inc., No. 6:08–cv–247–ORL–19GJK, 2008 WL 4371356, *6 (M.D.Fla. Sept. 22, 2008)); see also Paolino v. McClain, No. 4:06–CV–00025, 2006 WL 2025063, at *4 (S.D.Ga. July 17, 2006). Thus, the sixth and final factor likewise favors abstention.

Although Plaintiffs seek civil penalties in this CWA suit which they likely cannot recover in state court (see discussion *supra* at footnote 1), their state court complaint contains a panoply of state-law claims which are not present in the captioned suit and afford them with a meaningful opportunity to obtain complete relief, including compensatory damages which are not available under the CWA. In addition to compensatory damages, Plaintiffs' state court complaint prays for punitive damages, attorneys' fees, and injunctive relief. There is no reason to believe that Plaintiffs' initial choice of forum will not adequately protect Plaintiffs' rights. Furthermore, if the Court determines that Plaintiffs have viable CWA claims and elects to stay (not dismiss) the case *sub judice*, nothing will prevent Plaintiffs from pursuing their CWA claims in the future in the event that the Jefferson County action fails to completely resolve the parties' dispute.

In sum, the Colorado River factors, on balance, militate heavily in favor of abstention. The distinct and excessive danger of piecemeal litigation raised by Plaintiffs' parallel state and federal suits presents an extraordinary circumstance which justifies staying the instant case pending resolution of the state court suit.

### III. Conclusion

For all the foregoing reasons, the Court should **GRANT** this motion and **DISMISS**

Plaintiffs' instant CWA suit. In the alternative, abstention is justified under <u>Colorado River</u>, and

if the Court determines that Plaintiffs' claims survive dismissal, all proceedings in the captioned

matter should be **STAYED** pending the resolution of Plaintiffs' state court suit filed in the

Superior Court of Jefferson County, Georgia,

Respectfully submitted, this 10th day of May, 2017.

/s/ John E. Price
N. STATEN BITTING
Georgia Bar No. 058940
JOHN E. PRICE
Georgia Bar No. 142012
*Attorneys for Sunflower Farm & Ranch, Inc.,*
*Steven L. Peters, Ross A. Wenger and Kimberly K.*
*Peters*

OF COUNSEL:
FULCHER HAGLER LLP
One 10th Street, Suite 700
Augusta, GA 30901
(706) 724-0171
Email: sbitting@fulcherlaw.com
Email: jprice@fulcherlaw.com

/s/ Gillian S. Crowl
Gillian S. Crowl
Georgia Bar No. 654746
*Attorney for Defendant Nexton Mining*

**Gray, Rust, St. Amand, Moffett & Brieske**
1700 Atlanta Plaza
950 East Paces Ferry Road
Atlanta, Georgia 30326
404-870-7375 (Rust)
404-870-7389 (Crowl)
404 870-7374 fax

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2017, a copy of the foregoing was electronically served with the Clerk of Court using the CM/ECF system which will automatically send notification of such filing to the following attorneys of record:

Tyler J. Sniff
Donald D.J. Stack
Stack & Associates, P.C.
260 Peachtree Street
Suite 1200
Atlanta, GA 30303

J. Skye Wellesley
Michael J. Rust
Gillian S. Crowl
Gray Rust St. Amand Moffett & Brieske, LLP
1700 Atlanta Plaza
950 East Paces Ferry Road
Atlanta, GA 30326

I further certify that a true copy of the foregoing has been served on the following counsel by depositing same in the United States Mail with sufficient postage attached thereto to ensure delivery, addressed as follows:

Harry D. Revell
Nicholson Revell, LP
Gateway Professional Center
4137 Columbia Road
Augusta, GA 30907

J. Franklin Edenfield
Spivey, Carlton & Edenfield, PC
Post Office Box 309
Swainesboro, GA 30401

/s/ John E. Price