**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

EVELYN S. MERRITT, and          )
SHARON L. MERRITT MCMILLEN,     )
                                )
        Plaintiffs,             )
                                )
    v.                          )          **CIVIL ACTION NO. 17-CV-00040**
                                )
NEXTON MINING, INC.,            )
SUNFLOWER FARM & RANCH, INC.,   )
STEVEN L. PETERS,               )
KIMBERLY K. PETERS, and         )
ROSS A. WENGER,                 )
                                )
        Defendants.             )

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO**
**DISMISS AND STAY THE PROCEEDINGS**

The Court should deny Defendants' motion to dismiss and stay this citizen suit brought by

Evelyn S. Merritt, a 92-year old widow residing in Jefferson County, Georgia, and her daughter

("the Merritts") under the federal Clean Water Act ("CWA") to enjoin Defendants from illegally

discharging dredged and fill material into wetlands on an adjacent property that drain to two ponds

and a major tributary of the Ogeechee River on the property on which Mrs. Merritt has owned

and/or resided for decades, and to require Defendants to cleanup these wetlands.  Contrary to

Defendants' arguments, the Merritts sufficiently allege ongoing CWA violations under *Gwaltney*

and binding Eleventh Circuit precedent because they allege that the dredged and fill material

illegally discharged by Defendants remains in these wetlands and that an enormous berm and dike

constructed by Defendants continues to erode into and fill additional wetlands.  In addition, the

pre-suit notice letter sent by the Merritts to Defendants is legally sufficient because it identifies

multiple specific time frames when Defendants cleared, graded, and constructed structures of

dredged and fill material in and near specific wetlands on specific areas on specific parcels without a permit.  There are not exceptional circumstances for a stay in part because the state case filed by the Merritts for damage to their property does not involve violations of Section 404 of the CWA.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed . . . a party may move for judgment on the pleadings."  *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).  In considering such a motion, "[a court] accept[s] as true all material facts alleged in the non-moving party's pleading, and [a court] view[s] those facts in the light most favorable to the non-moving party."  *Id*.  "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied."  *Id*.  Rule 8 requires that a complaint contain "a short and plain statement of the ground for the court's jurisdiction."  Under Rule 8, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007).  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rule 8 "does not require a court at the motion-to-dismiss stage to consider whether the factual allegations are probably true."  *Id*. at 696.

## ARGUMENT

**I.     PLAINTIFFS SUFFICIENTLY ALLEGE ONGOING CLEAN WATER ACT VIOLATIONS UNDER *GWALTNEY* AND BINDING ELEVENTH CIRCUIT PRECEDENT BECAUSE THEY ALLEGE THAT ILLEGALLY DISCHARGED DREDGE AND FILL MATERIAL REMAINS IN JURISDICTIONAL WETLANDS AND THE ENORMOUS BERM AND DIKE CONSTRUCTED BY DEFENDANTS CONTINUES TO ERODE INTO AND FILL ADDITIONAL WETLANDS**

Defendants argue that the Merritts do not sufficiently allege ongoing violations of the Clean Water Act under *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S 49

(1987), because, according to Defendants, the discharges "are only alleged to have occurred entirely in the past," Mot. to Dismiss at 10, and "Plaintiffs do not allege facts showing that Defendants are engaging in any ongoing, affirmative conduct which . . . will cause discharges." Mot. to Dismiss at 6.  However, the Merritts' allegation that tens of thousands of cubic yards of dredge and fill material—discharged by Defendants into several acres of wetlands on the Peters Property within the past year without a permit—remain in these wetlands is, standing alone, a sufficient allegation of an ongoing violation of the Clean Water Act under *Gwaltney* and the clear weight of authority including multiple decisions in this district.  Second, under binding precedent in the Eleventh Circuit, the Merritts do in fact sufficiently allege that Defendants are engaging in ongoing, affirmative conduct which is currently causing illegal discharges through Defendants' ongoing failure and refusal to stabilize the enormous berm and large dike that they recently constructed on top of and adjacent to the wetlands on the Peters Property, which is causing these structures to continue to erode into and fill additional wetlands.  *See* Compl. ¶¶ 91–92, 106.

Section 505(a)(1) of the CWA states that "any citizen may commence a civil action . . . against any person . . . who is alleged ***to be in violation*** of an effluent standard or limitation under this [Act]."  33 U.S.C. § 1365(a)(1).  Section 505(f) defines "effluent standard or limitation under this [Act]" as either "an unlawful act under [Section 301(a)] of [the Act]" **or** "an effluent limitation or other limitation under Section [301]."  33 U.S.C. § 1365(f)(1).  Section 301(a) of the CWA provides that "except as in compliance with . . . section . . . 1344 [Section 404] . . . the discharge of any pollutant by any person shall be unlawful."  33 U.S.C. § 1311(a).  Section 404(a) of CWA and its implementing regulations prohibit the "discharge of dredge or fill material into waters of the United States" without a permit issued by the U.S. Army Corps of Engineers ("Corps").  33 U.S.C. § 1344(a); 33 C.F.R. § 323.1.  Citizens may bring a citizen suit against a person for

unpermitted discharges of dredge or fill material while leveling land to convert it to a commercial farm. *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 902 (5th Cir. 1983).

In *Gwaltney*, the Supreme Court held that "the most natural reading of 'to be in violation' is a requirement that citizen-plaintiffs allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future," and not "wholly past violations." 484 U.S. at 57. Notably, the Court "stressed that citizen-plaintiffs need not *prove* their allegations of ongoing noncompliance before jurisdiction attaches under section 505. Instead, a good faith allegation of violations that continued at the time suit was filed is sufficient for jurisdictional purposes." *Atlantic States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1133 (11th Cir. 1990). This is a "low standard." *City of Mtn. Park, Ga. v. Lakeside at Ansley, LLC*, 560 F. Supp. 2d 1288 (N.D. Ga. 2008).

*Gwaltney* involved alleged violations of Section 402 of the CWA (discharging wastewater without a National Pollutant Discharge Elimination System ("NPDES") permit) not Section 404 (discharging dredge or fill materials without Section 404 permit issued by the Corps) of the CWA. Specifically, in *Gwaltney*, the plaintiff alleged that the defendant was discharging wastewater with levels of total Kjeldahl nitrogen and chlorine that exceeded the limits in its NPDES permit in violation of Section 402. 484 U.S. at 53. On remand in *Gwaltney*, the Fourth Circuit affirmed the district court's finding of a sufficient good faith allegation of ongoing violations, *see Gwaltney*, 844 F.2d 170, 171 (4th Cir. 1988), as "there was no certainty . . . that [defendant's] system would correct one of the two major violation problems for which th[e] suit was brought . . . until nearly one year after the suit was filed." *Gwaltney*, 611 F. Supp. 1542, 1549 n.8 (E.D. Va. 1985).

While there is no Eleventh Circuit case directly on point, the clear weight of authority—which includes multiple decisions in this district—is that under *Gwaltney* a good faith allegation

that illegally discharged dredge or fill material remains in jurisdictional wetlands is a sufficient allegation of an ongoing violation of the CWA to survive a motion to dismiss for lack of subject matter jurisdiction.  For example, in *Jones Creek Investors, LLC v. Columbia County, Georgia*, No. 111-CV-174, 2013 WL 1338238, at *10–13 (S.D. Ga. Mar. 28, 2013), Chief Judge Wood, in holding that "the continued presence of illegally discharged fill material in U.S. jurisdictional waters constitutes a continuing violation," noted that "there is considerable support for its position."  *Id.* (collecting cases).  Likewise, in *Ogeechee-Canoochee Riverkeeper, Inc. v. T.C. Logging, Inc.*, No. 608-CV-064, 2009 WL 2390851, at *8 (S.D. Ga. Aug. 4, 2009), Judge Edenfield held that "the alleged violation continues as long as the fill remains in the wetland."  *Id.* (citing *Sasser v. EPA*, 990 F.2d 127, 129 (4th Cir. 1993) (holding that "each day the pollutant remains in the wetlands without a permit constitutes an additional day of violation")); *City of Mtn. Park, Ga. v. Lakeside at Ansley, LLC*, 560 F. Supp. 2d 1288, 1297 (N.D. Ga. 2008) (Pannell, J.) (holding that "the continuing presence of illegally discharged fill material can constitute an 'ongoing violation' under *Gwaltney*"); *Draper v. H. Roberts Family, LLC*, No. 06-CV-3057, 2009 WL 10668404 (N.D. Ga. Mar. 30, 2009) (Cooper, J.).[1]  Indeed, Defendants cite only two "outlier" cases involving the discharge of fill material with contrary holdings.  *See* Mot. to Dismiss at 8, 12.

Defendants argue that "this Court should focus on the statute itself, not on non-binding case law which purports to create a distinction which is . . . absent from the text of the CWA itself."

---

[1] *Accord Stillwater of Crown Point Homeowner's Ass'n, Inc. v. Stiglich*, 999 F. Supp. 2d 1111 (N.D. Ind. 2014); *Ohio Valley Envtl. Coal., Inc. v. Hernshaw Partners, LLC*, 984 F. Supp. 2d 589, 598 (S.D.W.V. 2013); *Stepniak v. United Materials, LLC*, No. 03-CV-569A, 2009 WL 3077888, at *4 (W.D.N.Y. Sept. 24, 2009); *Ctr. for Biological Diversity v. Marin Point Dev. Assocs.*, 434 F. Supp. 2d 789, 798 (C.D. Cal. 2006); *Greenfield Mills, Inc. v. Goss*, No. 1-CV-219, 2005 WL 1563433, at *2 (N.D. Ind. June 28, 2005); *Atl. States Legal Found., Inc. v. Hamelin*, 182 F. Supp. 2d 235, 248 n.20 (N.D.N.Y. 2001); *Informed Citizens United, Inc. v. USX Corp.*, 36 F. Supp.2d 375, 377 (S.D. Tex. 1999); *U.S. v. Reaves*, 923 F. Supp. 1530, 1534 (M.D. Fla. 1996); *U.S. v. Cumberland Farms of Conn., Inc.*, 647 F. Supp. 1166, 1183 (D. Mass. 1986).

Mot. to Dismiss at 8. However, the cases cited above recognize that the language of the CWA, as interpreted by the Supreme Court in *Gwaltney*, supports a holding that the continuing presence of illegally discharged fill material in jurisdictional wetlands is "a state of either continuous or intermittent violation" of Section 404. *Gwaltney*, 484 U.S. at 57. As explained by Justice Scalia's concurrence in *Gwaltney* which was joined by Justice Stevens and Justice O'Connor:

> The phrase in § 505(a), "to be in violation," **unlike the phrase "to be violating"** or "to have committed a violation," **suggests a state rather than an act**—the opposite of a state of compliance. A good or lucky day is not a state of compliance. Nor is the dubious state in which a past effluent problem is not recurring at the moment but **the cause of that problem has not been completely and clearly eradicated. When a company has violated an effluent standard or limitation, it remains, for purposes of § 505(a), "in violation" of that standard or limitation so long as it has not put in place remedial measures that clearly eliminate the cause of the violation.**

*Gwaltney*, 484 U.S. at 69 (Scalia, J., concurring) (emphasis added).

As such, "to be in violation" of Section 404 of the CWA means not just a situation where there is "an ongoing act" which illegally discharges dredge or fill material into wetlands, as Defendants argue, *see* Mot. to Dismiss at 10, **but also an ongoing state "where cleanup by a violator is possible after pollutants [dredge or fill material] have been illegally discharged."** *Draper*, 2009 WL 10668404, at * 11 (N.D. Ga. Mar. 30, 2009) (Cooper, J.); *Jones Creek Investors*, 2013 WL 1338238, at *12 (Wood, C.J.) (finding persuasive Justice Scalia's statutory interpretation in *Gwaltney*); *City of Mountain Park*, 560 F. Supp. 2d at 1294 (same) (Pannell, J.).

In addition, the Eleventh Circuit has stated that "the CWA should be liberally construed to achieve its objectives." *Miccosukee Tribe of Indians of Fla. v. EPA*, 105 F.3d 599, 603 (11th Cir. 1997). In *Gwaltney*, the Supreme Court explicitly stated that "Congress's use of the phrase 'alleged to be in violation' reflects a conscious sensitivity to the practical difficulties of detecting and proving chronic episodic violations of environmental standards." 484 U.S. at 65. As the cases

discussed above also recognize, interpreting "to be in violation" of Section 404 of the CWA to mean a state where illegally discharged dredge or fill material remains in wetlands and can be cleaned up is consistent with Congress' conscious sensitivity to these same practical difficulties and achieving the objectives of the CWA.  In the leading case of *N.C. Wildlife Federation v. Woodbury*, No. 87-CV-584, 1989 WL 106517, at *3 (E.D.N.C. Apr. 25, 1989), the court stated:

> If citizens suits were barred merely because any illegal ditching and drainage of a wetland tract was completed before it might reasonably be discovered, violators would have a powerful incentive to conceal their activities form public and private scrutiny—which would lead to serious problems in public and private enforcement of the Clean Water Act.

Likewise, in *City of Mountain Park*, Judge Pannell in the Northern District of Georgia noted that this interpretation achieves the objectives of the CWA as "fill materials do not significantly dissipate or dissolve over time.  Instead these fill materials, when discharged into a system such as [a] plaintiff's lakes, stay intact over time and thus continue to have roughly the same net polluting effect years or even decades after the time of their deposit."  560 F. Supp. 2d at 1296.[2]

In the present case, the Merritts allege that "from late 2013 through 2015, Defendants intensively cleared, grubbed, removed stumps and vegetation from, and mass graded hundreds of acres of Highly Erodible Land on [their] Property [directly adjacent to and upstream from the Merritt Property] to install several irrigation pivots and convert the Peters Property from forest-

---

[2] *National Parks & Conservation Association, Inc. v. Tennessee Valley Authority*, 502 F.3d 1316, 1322 (11th Cir. 2007), cited by Defendants, Mot. to Dismiss at 10, is inapplicable for several reasons.  First, the court in *TVA* neither considered the CWA nor *Gwaltney* but rather when to toll the statute of limitations under the Clean Air Act.  Here, all the discharges alleged by the Merritts occurred within the general federal five-year statute of limitations under 28 U.S.C. § 2462, that applies to CWA claims.  Also, unlike the present case, it was not possible to clean up the alleged violations of preconstruction permitting requirements.  Further, because both the language and objectives of the CWA as interpreted in *Gwaltney* support the conclusion that an ongoing violation of the CWA includes the ongoing state where cleanup by a violator is possible after unpermitted discharges of dredge and fill material, this specific and more recent expression of legislative intent controls over an argument based on a general statute of limitations provision not in the CWA.

pasture to irrigated row crops." Compl. ¶ 65.  The Merritts also allege that "Defendants used heavy construction equipment to clear, grub, remove stumps and vegetation from, and mass grade the Peters Property, including several track hoes, excavators, bulldozers, and multiple Quadtrac tractors [large tractors with tank-like treads] each dragging multiple scrapers/graders," Compl. ¶ 66, and that during such activities "Defendants discharged tens of thousands of cubic yards (enough to fill thousands of dump trucks) of dredge or fill material . . . into several acres of wetlands on the Peters Property . . . without . . . any permit." Compl. ¶ 74.  The Merritts clearly allege that "as of the date of the filing of this Complaint, tens of thousands of cubic yards of dredge and/or fill material remain in [these] wetlands." Compl. ¶ 105.  As such, the Merritts allege that it is possible for Defendants to remove this dredge or fill material from, and cleanup, these wetlands.

In addition, consistent with *Gwaltney*, the Merritts further allege that Defendants "remain . . . 'in violation' of [Section 404 of the CWA because they have] not put in place remedial measures that clearly eliminate the cause of the violation" and "taken remedial measures that had clearly achieved the effect of curing all past violations by the time suit was brought." *Gwaltney*, 484 U.S. at 69.  Specifically, the Merritts allege that "from 2014 through 2015, Defendants constructed an enormous fifteen to thirty (15 to 30) foot tall berm and/or embankment of dredged and/or fill material consisting of tens of thousands of cubic yards of dirt, rock, sand, and other pollutants on top of and adjacent to several acres of wetlands on the Peters Property" and that "during the summer of 2015, Defendants [also] constructed a large dike and/or dam consisting of thousands of cubic yards of dredge and/or fill material on top of and adjacent to wetlands . . . on the Peters Property." Compl. ¶ 84, 86.  The Merritts allege that "much of the enormous berm and/or embankment and large dike and/or dam that Defendants constructed on top of and adjacent to wetlands on the Peters Property **remain unstabilized and continue to erode** [into these

8

wetlands]." Compl. ¶ 92. Thus, under *Gwaltney* and the clear weight of authority discussed above the Merritts clearly do not allege "wholly past violations."

Critically—even if the Court rejects the clear weight of authority and accepts Defendants' argument that Plaintiffs must "allege facts showing that Defendants are engaging in ongoing, affirmative conduct which is currently causing . . . discharges," Mot. to Dismiss at 6—the allegations in the Complaint satisfy this standard under binding precedent in the Eleventh Circuit, as discussed below. The CWA broadly defines the term "discharge of a pollutant" to mean "***any*** addition of any pollutant to navigable waters from ***any*** point source." 33 U.S.C. § 1362(12) (emphases added); *accord* 33 C.F.R. § 323.2(f) ("the term discharge of fill material means the addition of fill material into waters of the United States"). The CWA also broadly defines the term "point source" to mean "any discernible, confined, and discrete conveyance, including but not limited to any . . . ditch, channel . . . conduit [or] discrete fissure . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14). In the Eleventh Circuit, courts interpret these terms "broadly." *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1009 (11th Cir. 2004).

For example, in *Sierra Club v. Abston Construction Co.*, 620 F.2d 41 (5th Cir. 1980), which is binding precedent in the Eleventh Circuit,[3] the former Fifth Circuit held that "gravity flow, resulting in a discharge into a navigable body of water, may be part of a point source discharge if the [defendants] initially collected . . . the materials." *Id.* at 45. The court also held that "a point source of pollution may also be present where [defendants] design spoil piles from discarded overburden such that, during periods of precipitation, erosion of spoil pile waste results in discharges into a navigable body of water by means of ditches, gullies, and similar conveyances,

---

[3] *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (adopting as binding precedent all cases decided by the former Fifth Circuit before October 1, 1981).

even if the [defendants] have done nothing beyond the mere collection of rock and other materials." *Id.* (citing *U.S. v. Earth Sciences, Inc.*, 599 F.2d 368 (10th Cir. 1979) (holding that point source includes "fissure[s] in [a] dirt berm" caused by "flaws in the construction")).   In *Parker*, the Eleventh Circuit also held that "piles of debris" and "erosion gullies" are point sources.  386 F.3d at 1009; *O'Leary v. Moyer's Landfill, Inc.*, 523 F. Supp. 642 (E.D. Pa. 1981) (finding "gullies, trenches, and ditches [and] broken dirt berms . . . constitute point source discharges"); *Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133 (10th Cir. 2005) ("Although we agree that the term "addition" implies affirmative conduct, such a requirement is satisfied by the contemporaneous introduction of [pollutants] from [defendant's] property, through a point source owned and maintained by [defendant] to a stream."); *Umatilla*, 962 F. Supp. at 1322 ("many [CWA] violations occur because of [acts of omission/neglect including] spills, floods, breaking pipes, and so on").

Here, like the defendants in *Abston* who constructed piles of discarded overburden, 620 F.2d at 45, and the defendants in *Parker* who collected "piles of debris," 386 F.3d at 1009, the Merritts allege that Defendants recently constructed an enormous berm and large dike "consisting of dirt, rock, sand, and other pollutants" on top of and adjacent to jurisdictional wetlands on the Peters Property.  Compl. ¶¶ 91–92, 106.  Just like the illegal discharges in *Abston* and *Parker*, in the present case, the Merritts allege that "during periods of precipitation, erosion of [the enormous berm and large dike on top of and adjacent to the wetlands on the Peters Property] results in discharges [of pollutants, i.e., dredge and fill material] into [these wetlands] by means of ditches, gullies, and similar conveyances" and these ongoing discharges without a Section 404 permit violate the CWA.  *Abston*, 620 F.2d at 45.[4]  As such, the Merritts do not allege that "the addition

---

[4] The Second Circuit's decision in *Connecticut Coastal Fishermen's Association v. Remington Arms Co.*, 989 F.2d 1305 (2d Cir. 1993), cited by Defendants, Mot. to Dismiss at 11, is inapplicable because in that case "at the time of suit, the discharging activity *from a point source* . . . had ceased"

of pollutants stopped in 2016," Mot. to Dismiss at 10, but rather is ongoing. They also allege that Defendants still own and/or control the berm and dike that they constructed on the Peters Property and are operating an intensive farming operation on the Peters Property. Compl. ¶¶ 19–24, 69, 75.

These allegations are not "belied" by the fact that the Merritts have not yet moved for an injunction, as Defendants argue, Mot. to Dismiss at 12, since under *Gwaltney* the Merritts "need not *prove* their allegations . . . before jurisdiction attaches." *Tyson Foods*, 897 F.2d at 1133. Thus, under binding precedent in the Eleventh Circuit, the Merritts sufficiently allege that Defendants are engaging in ongoing, affirmative conduct which is currently causing illegal discharges through Defendants' ongoing failure and refusal to stabilize the enormous berm and large dike that they constructed on top of and adjacent to the wetlands on the Peters Property, which is causing these structures to continue to erode and add fill material into jurisdictional wetlands.

## II.   PLAINTIFFS' NOTICE LETTER COMPLIES WITH 40 C.F.R. § 135.3 BECAUSE IT IDENTIFIES MULTIPLE SPECIFIC TIME FRAMES WHEN DEFENDANTS CLEARED, GRADED, AND CONSTRUCTED SPECIFIC STRUCTURES IN AND NEAR SPECIFIC WATERS ON SPECIFIC AREAS ON SPECIFIC PARCELS WITHOUT A PERMIT AND REQUESTED CLEANUP OF THESE WATERS

Defendants argue that the Merritts' pre-suit notice letter fails to provide sufficient information to comply with 40 C.F.R. § 135.3 because, according to Defendants, it does not "specify[] which waters have been destroyed and the specific areas that have been filled" and does not "provide adequate information regarding the time of the violations." Mot. to Dismiss at 14. As discussed below, the Merritt Notice Letter complied with the regulation by simply identifying the specific parcels on which Defendants' unpermitted discharges of dredged and fill material are

---

whereas, in the present case, "the discharge from the point source [the enormous berm and large dike on top of and adjacent to the wetlands] is occurring now." *See Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133 (10th Cir. 2005) (finding sufficient allegation of ongoing violation of CWA where complaint alleged ongoing discharged of pollutants from an abandoned mine shaft owned by a passive owner that had never conducted mining operations on the property).

ongoing, but nevertheless the Merritt Notice Letter does in fact go above and beyond that and specify the "specific areas filled" through both a specific description and dated aerial photographs. For example, the Notice Letter states in detail that "heavy construction equipment was used to construct and discharge enormous banks and berms of fill material in wetlands and a pond . . . **on the southwestern border and eastern portions of Parcel No. 0025021 and southeastern portion of Parcel No. 0025015"** and that the Merritts seek "removal of [this] dredged and fill material." ECF No. 1-1 at 3.  In addition, as discussed below, the Notice Letter provides adequate information regarding the time of the violations by identifying multiple specific time frames for specific conduct and discharges that violate a specific section of the CWA (Section 404).

Under 40 C.F.R. § 135.3, a notice letter must contain "sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation [and] the date or dates of such violation." *Id.*  These requirements must be met "to give the alleged violator to opportunity to correct the problem before a lawsuit is filed." *TVA*, 502 F.3d at 1329; *Mrosek v. City of Peachtree City*, 539 Fed. App'x 938, 942 (11th Cir. 2013) ("the notice need only put the defendant in a position to remedy the violations alleged") (citing *Atl. States Legal Found., Inc. v. Stroh Die Casting Co.*, 116 F.3d 814, 819–20 (7th Cir. 1997) ("In practical terms, the notice must be sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit.")); *Kendall v. Thaxton Road, LLC*, 443 Fed. App'x 388, 392 (11th Cir. 2011) (notice sufficient where "it did not prevent Defendants from taking steps to alleviate the alleged injury"); *Atwell v. KW Plastics Recycling Div.*, 173 F. Supp. 2d 1213, 1221 (M.D. Ala. 2001) (holding that **"the regulations do not require absolute specificity"** and **"the regulation requires something**

less than a thoroughly detailed account of every possible allegation"); *Carney v. Gordon Cnty., Ga.*, No. 06-CV-36, 2006 WL 4347048 (N.D. Ga. Sept. 12, 2006) ("much of the argument about the kind and form of notice mandated by the statute and regulations is a semantical debate").

For example, in *Purvis v. Douglasville Dev., LLC*, No. 06-CV-415, 2006 WL 3709610 (N.D. Ga. Nov. 9, 2006), the notice letter at issue simply stated that "excessive discharges of eroded soils" into "a tributary . . . and associated wetlands" violated Section 404 and were caused by "land disturbance and other development activities" on "development sites . . . in Douglas County, Georgia." *Id*. at *4; Ex. A (Notice in *Purvis*). The defendant in *Purvis* argued that these statements failed to sufficiently identify "what specific activities ha[d] resulted in discharge of dredged or fill materials" and the "specific identify or location of the navigable waters or wetlands into which dredged or fill materials ha[d] been deposited." *Id*. at *5. The court rejected these arguments and found that the "notice provide[d] Defendant with sufficient information to identify the pertinent aspects of Plaintiffs' discharges without extensive investigation and g[ave] Defendant opportunity to bring itself into compliance with the CWA." *Id*. The court also found that the notice letter's statement that the date of the violations was "from March 21, 2002 and . . . presently occurring," was a **"reasonably specific time-frame for Defendant to examine its conduct, and [was] sufficiently specific to enable Defendant to evaluate its conduct."** *Id*. at *6; Ex. A. at 5.

Likewise, in *Carney*, the notice letter briefly stated that "land disturbance and other development activities undertaken by [defendants] on [two] properties in Gordon County, Georgia, have resulted in discharges which violate Section 301(a) of the [CWA]" and that defendants were "discharging dredge and fill material into wetlands . . . without a proper permit." *Id*. at 5; *see also* Ex. B (Notice in *Carney*). The notice broadly stated that "additional discharges have occurred, and continue to occur, with each rain event from the start of land disturbing activities to the

present." *Id.* at 5; Ex. B at 4.  The County argued that "the letter did not sufficiently identify the location of the alleged violations and that the letter's reference to violations of section 404 of the [CWA] [was] too vague to alert it to the specific violations alleged to have occurred." *Id.* at *7. The court concluded that while "the letter could have been more carefully and precisely drawn . . . it [was] 'sufficiently specific to inform the alleged violator about what it [was] doing wrong." *Id.*

Here, the Merritt Notice Letter, in part, states that "in summer and fall of 2013 [Defendants] acquired Jefferson County Parcel Nos. 0025021 & 0025015" and that these parcels "contained Waters of the United States, including wetlands, ponds, and tributaries of Williamson Swamp Creek that flow to and feed the ponds on the Merritt Property."  ECF No. 1-1 at 3.  It also states that "from late 2013 through 2015, the Sunflower/Peters Property was intensively cleared, grubbed, and mass graded" with "heavy construction equipment" and that during this work "tens of thousands of cubic yards of dredged and fill material were discharged into . . . acres of wetlands, ponds, and tributaries of Williamson Swamp Creek—on Jefferson County Parcel Nos. 0025021 & 0025015 without and not in accordance with any permit issued by the U.S. Army Corps of Engineers."  *Id.*   In addition, it states that "during 2014 and 2015, this heavy construction equipment was used to construct and discharge enormous banks and berms of fill material in wetlands and a pond that are Waters of the United States **on the southwestern border and eastern portions of Parcel No. 0025021 and southeastern portion of Parcel No. 0025015** without . . . any permit." *Id.*  It further states that "the construction on the Sunflower/Peters Property of a ditch with bridge for irrigation pivot and a dike across from the Merritt residence . . . destroyed Waters of the United States on the Sunflower/Peters Property." *Id.*  Moreover, attached to the Merritt Notice Letter are dated aerial photographs of these parcels from before, during, and after the clearing and grading "[a]s additional identification of the locations of the . . . illegal discharges."

*Id.* It explains that the "illegal discharges of dredged and fill material began in late 2013 and continued through 2014 and 2015," "from late 2013 through today, the dredged and fill material remained in the above-described wetlands, ponds, and tributaries of Williamson Swamp Creek," and "runoff of water and silt onto the Merritt Property" from the enormous banks and berms of fill material "continues to severely damage [the Merritt] Property." *Id.* at 4. It also explicitly informed Defendants that the Merritts seek "removal of [this] dredged and fill material." *Id.* at 5.

Like the notice letters found sufficient in *Purvis* and *Carney*, which described the "location of the alleged violation" of Section 404 of the CWA by simply identifying the "development site" or "property," i.e., parcel, where the land disturbance causing the violations was occurring, the Merritts' Notice Letter identifies "Jefferson County Parcel Nos. 0025021 & 0025015" as the site where the clearing and grading occurred and on which the eroding enormous berm and large dike are located. *Compare* ECF No. 1-1 at 3 *with* Ex. A (Notice in *Purvis*) and Ex. B (Notice in *Carney*).

Contrary to these cases, Defendants argue that a notice letter must "specif[y] which waters have been destroyed and the specific areas that have been filled," Mot. to Dismiss at 14, but the language of the regulation does not require such information and neither of the notice letters in *Purvis* and *Carney* contained such information. **Nevertheless, the Merritts' Notice Letter does in fact contain such information and identify "what portions of any specific wetlands, ponds or tributaries," Mot. to Dismiss at 14, are being destroyed.** Indeed, the Merritt Notice Letter states in detail that "heavy construction equipment was used to construct and discharge enormous banks and berms of fill material in wetlands and a pond that are Waters of the United States **on the southwestern border and eastern portions of Parcel No. 0025021 and southeastern portion of Parcel No. 0025015** without and not in accordance with any permit issued by the . . . Corps." ECF No. 1-1 at 3. By identifying specific areas of these parcels where the adversely

impacted jurisdictional waters are located, the Merritt Notice Letter provides a more specific identification of the adversely impacted waters than the notice letters in *Purvis* and *Carney*, which merely used the phrases "surrounding wetlands," "a tributary of Pine Log Creek basin and . . . associated wetlands," and "a tributary . . . and associated wetlands."  *See* Ex. A and Ex. B.

Moreover, going above and beyond the requirements of the regulation and the notice letters in *Purvis* and *Carney*, the Merritts attached to their Notice Letter three dated aerial photographs of the parcels from before, during, and after the clearing and grading.  Contrary to Defendants' argument that "these aerial photographs do not provide any specific information regarding where the alleged violations occurred," Mot. to Dismiss at 15, the location of: (1) the tributary of Williamson Swamp Creek and adjacent wetlands; (2) the enormous unstabilized berm constructed on top of and adjacent to these wetlands; and (3) the ditch and bridge and dike constructed on wetlands across from the Merritt Property are all clearly visible in these photographs.  *See* ECF No. 1-1 at 7–9.  In addition, Defendants, who know where their property lines are located, could use these aerial photographs to identify these structures on the "southwestern border and eastern portions of Parcel No. 0025021 and southeastern portion of Parcel No. 0025015."  ECF No. 1-1 at 3.  Thus, the Merritt Notice Letter provided more than enough information "to permit the [Defendants] to identify . . . the location of the alleged violation."  40 C.F.R. § 135.3.

In a footnote, Defendants briefly argue that the Merritt Notice Letter does not "provide adequate information regarding the time of the violations."  Mot. to Dismiss at 14 n.7.  However, like in *Purvis* where the court found that the statement in the notice letter that the date of the violations was "from March 21, 2002 and . . . presently occurring" was a "reasonably specific-time frame for Defendant to examine its conduct and [was] sufficiently specific to enable Defendant to evaluate its conduct," *Purvis*, 2006 WL 3709610, at *6, the Merritt Notice Letter

provides multiple specific time frames for the specific conduct and discharges at issue. Specifically, it states that the mass grading with heavy construction equipment occurred "from late 2013 through 2015" and the enormous unstabilized berm and dike was constructed "during 2014 and 2015" and that Defendants illegally discharged dredged and fill material into jurisdictional waters during these specific time periods. ECF No. 1-1. The Merritt Notice Letter also specifically states that "from late 2013 through today, the dredged and fill material remained in the . . . wetlands" and that it "continues to severely damage the Merritt [Property]." *Id.*

Defendants' lone argument that these statements are like those in the notice letter found deficient in *TVA* is unpersuasive. The notice letter in *TVA* contained a "sweeping" statement that since the TVA modified a power plant in 1983 TVA had "failed every day" over a "nearly 20-year span of time" to comply with all the numerous "potentially applicable" performance standards under the Clean Air Act which "provide[d] little guidance to TVA in identifying the violations of which it was accused." 502 F.3d at 1330. The Merritt Notice Letter is entirely unlike this notice letter in *TVA* because it provides multiple specific time frames for specific conduct and discharges that violate a specific section of the CWA (Section 404). Moreover, the dated aerial photographs attached to it provided Defendants with additional information on the dates of the construction and discharges. Thus, the Merritt Notice Letter provided more than enough information "to permit the [Defendants] to identify . . . the . . . dates of [the] violations [of Section 404]." 40 C.F.R. § 135.3.

Moreover, the fact that "Plaintiffs . . . received no response to the Notice Letter from Defendants," Compl. ¶ 2, even though in their Notice Letter Plaintiffs offered to "discuss effective remedies . . . and other relevant facts and data," ECF No. 1-1 at 5, belies Defendants' argument that the Merritts' Notice Letter is inadequate. Therefore, the Merritt Notice Letter more than complies with the pre-suit notice regulations.

III.   **THERE ARE NOT EXCEPTIONAL CIRCUMSTANCES FOR A STAY AS THE CWA CASE AND THE STATE CASE ARE NOT PARALLEL, ALL THE SIGNIFICANT FACTORS WEIGH AGAINST A STAY, AND THERE IS LITTLE TO NO RISK OF INCONSISTENT LEGAL OR FACTUAL DETERMINATIONS**

Defendants argue that if the Court does not dismiss the Complaint it should "postpone the exercise of jurisdiction" and stay this case under *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813 (1976). Defendants argue that the CWA case and the case filed by the Merritts last year in the Superior Court of Jefferson County, one year before they sent their Notice Letter, involve "substantially the same parties and issues." Mot. to Dismiss at 16. Defendants also argue that the *Colorado River* factors favor abstention because there is a "danger of piecemeal litigation." raised by the two cases. Mot. to Dismiss at 19. However, as discussed below, the two cases are not parallel because: (1) Defendant Nexton Mining, Inc., the lead defendant and a party necessary to full resolution of the issues between the parties is not a party to the state case; (2) the complaint in the state case neither states any CWA claims nor any claims related to Section 404; and (3) the state court cannot provide all the relief requested in the CWA case. Even if the two cases are parallel, as discussed below, all the significant factors weigh against a stay and there is little to no risk of inconsistent legal or factual determinations.

Defendants overstate when a district court should stay a case under this doctrine. "Generally . . . the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." 424 U.S. at 817. A district court may stay a federal case when there is a pending state case based on "considerations of wise judicial administration." *Id.* at 813. However, this is an "extraordinary and narrow exception to the ["virtually unflagging"] duty of a District Court to adjudicate a controversy before it," *id.* at 813, and is "permissible in fewer circumstances than are . . . other abstention doctrines, which themselves carve out only slender exceptions to the robust duty to exercise jurisdiction." *Abrosia*

*Coal and Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1331 (11th Cir. 2004); *Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013) ("*Colorado River* abstention is particularly rare"); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983) (only "the clearest of justifications" support a stay).

"As a threshold matter," a district court should not enter a stay unless the "federal and state proceedings involve substantially the same parties and substantially the same issues." *Abrosia*, 368 F.3d at 1330. **"[I]f there is any substantial doubt about whether two cases are parallel the court should not abstain."** *Acosta v. James A. Gustino, P.A.*, 478 Fed. App'x 620, 622 (11th Cir. 2012); *Moses*, 460 U.S. at 28 ("If there is any substantial doubt as to [whether the state case will be an adequate vehicle for the complete and prompt resolution of the issues between the parties] it would be a **serious abuse of discretion** to grant the state or dismissal at all.") (emphasis added). **Notably, "this analysis focuses on matters as they currently exist, not as they could be modified."** *Fru-Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 535 (8th Cir. 2009).

If the district court determines that the two cases are parallel, then, not six, but "eight factors are weighed to analyze the permissibility of abstention":

> (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights, (7) the vexatious or reactive nature of either [cases], and (8) whether the concurrent cases involve a federal statute the evinces a policy favoring abstention.

*Wilson v. Bank of Am., N.A.*, No. 16-13750, 2017 WL 1314842 (11th Cir. Apr. 10, 2017). The district court balances "the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses*, 460 at 16. **However, the Supreme Court has clearly indicated that "the presence of federal-law issues must always be a major consideration weighing against surrender."** *Id*. **at 26.** The Eleventh Circuit has held that if a

factor is inapposite or neutral, it weighs against abstention. *Jackson-Platts*, 727 F.3d at 1141 ("the federal forum and the state forum are equally convenient; this factor thus cuts against abstention"). The third factor "does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious." *Id*. at 1142; *Abrosia*, 368 F.3d at 1333 (noting that *Colorado River* "involve[d] claims against 1,000 parties"). Regarding the fourth factor, "what matters is not so much the 'chronological order' in which the parties initiated the concurrent proceedings, but the progress of the proceedings and whether the party availing itself of the federal forum should have acted earlier." 727 F.3d at 1142.

Case law indicates that a district court should only stay a federal Clean Water Act citizen suit under this doctrine where there are truly exceptional circumstances. Indeed, a state case and a federal CWA citizen suit are not parallel because a state case cannot resolve the issues in a federal CWA citizen suit since only a federal court can assess civil penalties under the CWA. 28 U.S.C. § 1355 ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of any action . . . for the . . . enforcement of any . . . penalty . . . incurred under any Act of Congress."); *Remington v. Mathson*, 2010 WL 1233803, at *9 (N.D. Cal. Mar. 26, 2010); *Brewer v. Bristol, Tenn.*, 577 F. Supp. 519, 526 (E.D. Tenn. 1983) (civil penalties are "cumulative [to any relief in state case] rather than conflicting"). **This is true even where a state case involves a negligence per se claim based on a violation of the CWA.** *Remington*, 2010 WL 1233803, at *9 n.11 (where "a complaint . . . refers to violations of the CWA in its negligence and negligence per se claim . . . this does not transform this traditional state law claim . . . to a federal claim").

Likewise, the most significant of the eight factors weigh against stay of a federal CWA citizen suit. Most importantly, a citizen under the CWA necessarily focuses on issues of federal environmental law. *Anderson v. TLC Dev. Group, Inc.*, No. 06-CV-97, 2006 WL 3949173, at *3

(M.D. Ga. Aug. 18, 2006) (Royal, J.) (declining to stay CWA case and noting that "most significant of the . . . factors" is the presence of federal law issues in a CWA citizen suit).  In addition, Section 505 of the CWA clearly evinces a policy against abstention because it authorizes a citizen suit "even if a federal or state agency files a later parallel action."  *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 502–503 (7th Cir. 2011) (collecting CWA cases); *Brewer*, 577 F. Supp. at 526; *Pirgim Public Interest Lobby v. Dow Chemical Co.*, No. 95-CV-73286, 1996 WL 903838, at *7 (E.D. Mich. Feb. 16, 1996).  Further, a state case is inadequate to protect a citizen suit plaintiff's rights because, as discussed above, a state court cannot assess civil penalties.  Moreover, a CWA citizen suit and a state case involving common law claims for property damage do "not revolve around . . . an item of property but rather around allegations of unlawful conduct," and as such the first factor weighs against abstention.  *Hooker v. Chickerling Properties, LLC*, No. 06-0849, 2007 WL 1296051, at *4 (M.D. Tenn. May 1, 2007); *Anderson*, 2006 WL 3949173, at *4.

For example, in *Hooker*, private property owners filed a complaint in state court that pled state common law claims of nuisance, trespass, negligence, and violations of the Tennessee Water Quality Control Act regarding runoff of stormwater and sediment onto their property caused by clearing and grading of defendant's property.  2007 WL 1296051, at *1.  The plaintiffs sought damages and injunctive relief.  *Id*.  One year later, the plaintiff filed a federal CWA citizen suit and the court declined to stay the case.  *Id*. at *4.  The court found that the cases were not parallel because "while both revolve[d] in some way around the drainage from the [clearing and grading] project onto Plaintiffs' property, the state court case w[ould] not dispose of Plaintiffs' CWA claim . . . nor w[ould] the relief necessarily be the same should Plaintiffs prevail in both actions."  *Id*.  The court in *Hooker* also found that, even if the cases were parallel, "fully half of the [*Colorado River*] factors" weighed against a stay.  *Id*. at *5.  The court found that the presence of federal law

issues, the fact that the CWA case was not an *in rem* proceeding, and the fact that the state court forum was "within easy driving distance" weighed against a stay. The court noted that the fact that the CWA case was filed one year after the state case and after "some discovery [had] already occurred" in the state case at best "may weigh slightly in favor of a stay." *Id.* at *4. The court concluded that while "an ongoing proceeding in state court relating to the water runoff could theoretically result in inconsistent legal or factual determinations," the Supreme Court specifically stated that "the mere potential for conflict in the results of adjudication, does not, without more, warrant staying exercise of federal jurisdiction." *Id.* (quoting *Colorado River*, 424 U.S. at 816).[5]

In the present case, Defendant Nexton Mining, Inc. is not a party to the state case. While Defendant Nexton Mining, Inc. is one defendant, it is the lead defendant and a party necessary to full resolution of all the issues between the parties. *See* Compl. ¶ 67 ("Much of th[e] heavy construction equipment was owned and/or operated by Defendant Nexton Mining, Inc."), ¶ 71 ("Employees of Defendant Nexton Mining, Inc. . . . mass graded the Peters Property"), ¶ 72 ("Defendant Nexton Mining, Inc. paid persons including [other defendants] for the . . . mass grading of the Peters Property"). In addition, contrary to Defendants' arguments, the complaint in the state case as it currently exists **does not** state any CWA claims. While one part of the negligence per se claim in the state case is based on an alleged violation of the CWA, "this does

---

[5] *See also Remington*, 2010 WL 1233802, at *9 (stay not appropriate even where a plaintiff raised the same claims of nuisance, trespass, and negligence per se in both the state case and the subsequent CWA case); *Kopacz v. Hopkinsville Surface and Stormwater Utility*, 714 F. Supp. 2d 682 (W.D. Ky. 2010) (stay not appropriate even where state court denied multiple motions for a preliminary in junction and summary judgment motions were pending where CWA claim rested on "facts . . . which [were] different from the facts and evidence required to establish . . . state common law claims"); *Mut. Life Ins. Co. of N.Y. v. Mobil Corp.*, No. 96-CV-1781, 1998 WL 160820, at *5 (N.D.N.Y. Mar. 31, 1998) (stay not appropriate even where CWA case filed three years after state case concerning same gasoline spill because the state case "concern[ed] distinct questions of state law under . . . various theories including negligence . . . trespass and nuisance").

not transform this traditional state law claim for . . . negligence per se to a federal claim." *Remington*, 2010 WL 1233803, at *9 n.11.  **Even if it did, the violation of the CWA alleged as part of the negligence per se claim in the state case is a violation of Section 402 (discharges of stormwater without a NPDES Industrial Stormwater General Permit) not Section 404 (discharges of dredged and fill material without a permit issued by the Corps) as alleged in the CWA case.  ECF No. 17-1 at 18.**  Further, as Defendants admit, the state court cannot assess civil penalties, and, unlike in the CWA case in which the Merritts can recover their litigation costs if they only "substantially prevail," 33 U.S.C. § 1365(d), in the state case the Merritts can only recover such damages if a jury makes a finding of "bad faith" under O.C.G.A. § 13-6-11. Accordingly, like in *Hooker*, "while both [cases filed by the Merritts] revolve in some way around the drainage from the [clearing and grading on the Peters Property] onto [the Merritt] Property, the state court case will not dispose of Plaintiffs' CWA claim . . . nor will the relief . . . be the same should Plaintiffs prevail in both actions."  *Hooker*, 2007 WL 1296051, at *5.  For these reasons, there is much more than "any substantial doubt about whether [the] two cases are parallel [and thus] the court should not abstain."  *Acosta*, 478 Fed. App'x at 622; *Moses*, 460 U.S. at 28.

Even if the Court finds that the two cases are parallel, all the significant factors weigh against a finding of extraordinary circumstances for a stay.  The "most significant of the . . . factors," rather than being "inconclusive" as Defendants argue, Mot. to Dismiss at 18, strongly weights against a stay as the federal case only involves issues of federal environmental law. *Anderson*, 2006 WL 3949173, at *3.  While Defendants argue that "federal law will not necessarily provide the rule of decision" in the state case, this factor asks whether federal law will be applied in the federal case, **not** the state case.  In addition, as discussed above, Section 505 of the CWA clearly evinces a policy against abstention, *Adkins*, 644 F.3d at 502, which Defendants ignore.

Further, Defendants admit that the two cases are not *in rem* proceedings.  Moreover, this Court is not inconvenient for Defendant Ross Wenger who resides in Louisville and more convenient for the other four Defendants who all reside in Augusta where they were served.  ECF Nos. 18, 28, 29, 30 & 31.  Even if this factor is "essentially neutral" as Defendants argue, in the Eleventh Circuit if the fora "are equally convenient [it] cuts against abstention."  *Jackson-Platts*, 727 F.3d at 1141.

Defendants' primary argument that there is a "danger of piecemeal litigation raised by Plaintiffs' parallel state and federal suits," Mot. to Dismiss at 18, is based on a misreading of the complaint in the state case and *Colorado River*.  Because the complaint in the state case as it currently exists does not raise any issues under Section 404 of the CWA, and the complaint in the federal case does not contain any state common law claims, there is little to no risk of inconsistent legal or factual determinations.  As such, *Moorer v. Demopolis Waterworks and Sewer Bd.*, 374 F.3d 994 (11th Cir. 2004), cited by Defendants, Mot. to Dismiss at 18, is clearly inapposite since in *Moorer* the state case and the federal case contained identical claims under the Alabama Water Pollution Control Act.  *See id*. at 997.  In addition, like in *Hooker*, even if "the ongoing proceeding in the state case relating to the water runoff could theoretically result in inconsistent legal or factual determinations," this is clearly not exceptional enough for a stay.  *Hooker*, 2007 WL 1296051, at *4.  Indeed, as the Eleventh Circuit stated in *Abrosia*, a situation where "dual proceedings . . . will likely result in some unremarkable repetition of efforts and possibly some piece-by-piece decision-making [does not] pose any greater waste or danger . . . than it does in the vast majority [of] federal cases with concurrent state counterparts."  368 F.3d at 1333.

Finally, the progress in the state case is not as significant as Defendants argue.  Not all the parties have been deposed, only six depositions have occurred (no experts), no dispositive motions have been filed, and only one hearing on a still pending motion to compel filed by Plaintiffs has

24

occurred. *See* ECF No. 17-2. As such, the progress in the state case is like the progress of the state case in *Hooker* where the CWA case was filed one year after the state case and after "some discovery [had] already occurred. 2007 WL 1296051, at *4.[6] More importantly, the Merritts sent their Notice Letter to Defendants shortly after their wetlands expert first visited the Peters Property with Defendants' during a joint site inspection in January 2017, ECF No. 17-2 at 2, and promptly filed the present case in April 2017 after Defendants failed to respond to the Notice Letter. Accordingly, the Merritts could not have acted much earlier in availing themselves of the federal forum. *Jackson-Platts*, 727 F.3d at 1142. Thus this factor at best may weigh slightly in favor of a stay, but it cannot outweigh all the significant factors that weigh against a stay discussed above.

Therefore, there are not exceptional circumstances to stay this CWA citizen suit.

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss and Stay the Proceedings. Alternatively, the Court should grant Plaintiffs leave to amend the Complaint.

Respectfully submitted,

Date: **June 7, 2017**　　　　　　　**s/ Tyler J. Sniff**
　　　　　　　　　　　　　　　　Donald D.J. Stack
　　　　　　　　　　　　　　　　Georgia Bar No. 673735
　　　　　　　　　　　　　　　　Tyler J. Sniff
　　　　　　　　　　　　　　　　Georgia Bar No. 403125
　　　　　　　　　　　　　　　　STACK & ASSOCIATES, P.C.
　　　　　　　　　　　　　　　　260 Peachtree Street, Suite 1200
　　　　　　　　　　　　　　　　Atlanta, Georgia 30303
　　　　　　　　　　　　　　　　Telephone: (404) 525-9205
　　　　　　　　　　　　　　　　Facsimile: (404) 522-0275
　　　　　　　　　　　　　　　　E-mail: tsniff@stack-envirolaw.com
　　　　　　　　　　　　　　　　*Counsel for Plaintiffs*

---

[6] *See also Kopacz*, 714 F. Supp. at 682 (stay not appropriate even where state court denied multiple motions multiple motions for a preliminary in junction and summary judgment motions were pending); *Mobil Corp.*, 1998 WL 160820, at *5 (stay not appropriate even where CWA case filed three years after state case concerning same gasoline spill).

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

| | | |
|---|---|---|
| EVELYN S. MERRITT, and<br>SHARON L. MERRITT MCMILLEN,<br>*Individually and as Trustee of the Merritt<br>Living Trust*,<br><br>Plaintiffs,<br><br>v.<br><br>NEXTON MINING, INC.,<br>SUNFLOWER FARM & RANCH, INC.,<br>STEVEN L. PETERS,<br>KIMBERLY K. PETERS, and<br>ROSS A. WENGER,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CIVIL ACTION NO. 17-CV-00040** |

## CERTIFICATE OF SERVICE

This is to certify that I have on this day served all the parties in this case with

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**AND STAY THE PROCEEDINGS** in accordance with the directives from the Court Notice of

Electronic Filing ("NEF") which was generated as a result of electronic filing.

Date: **June 7, 2017**

**s/ Tyler J. Sniff**
Tyler J. Sniff
Georgia Bar No. 403125
STACK & ASSOCIATES, P.C.
260 Peachtree Street, Suite 1200
Atlanta, Georgia 30303
Telephone: (404) 525-9205
Facsimile: (404) 522-0275
E-mail: tsniff@stack-envirolaw.com